Mack TRAVIS, Plaintiff,

v.

Otis R. BOWEN, Defendant.

Civ. A. No. 85–2839.

United States District Court, District of Columbia.

March 13, 1986.

---

Carolyn McKenney, Koonz, McKenney & Johnson, P.C., Washington, D.C., for plaintiff.

Joseph E. DiGenova, U.S. Atty., Royce C. Lambert, Asst. U.S. Atty., Clare M. Whitaker, Asst. U.S. Atty., Washington, D.C., Peggy D. Pamplin, Paralegal Specialist, for defendant; Randolph W. Gaines, Deputy Asst. Gen. Counsel for Litigation, A. George Lowe, Chief, Disability Litigation Branch, Dept. of HHS, Beverly Dennis, III, Reg. Atty., Paul S. Ceja, Asst. Reg. Atty., Office of General Counsel, Region III, Dept. of HHS, of counsel.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff brings this action under the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a decision made by the Secretary of Health and Human Services denying plaintiff's claims for disability insurance benefits and Supplemental Security Income benefits. Plaintiff alleges that he became disabled in July of 1977 due to a slipped disc in his back. On behalf of the Secretary, an Administrative Law Judge (ALJ) considered plaintiff's case *de novo* and determined that plaintiff had the ability to engage in sedentary work activity as defined by the Social Security Act, and thus was not "disabled" within the meaning of the Act. The Appeals Council denied plaintiff's request for review, and the decision became final on August 5, 1985.

To qualify for disability insurance benefits, one must be "under a disability" as defined by the Social Security Act. 42 U.S.C. § 423(a)(1)(D). The term "disability" is defined as:

[an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C). To find a disability, a two step test must be met. First, a medically determinable impairment must be shown to exist; and second, there must be a factual determination that the impairment renders the plaintiff unable to perform substantial gainful employment. 42 U.S.C. § 1382c(a)(3)(A); *Torres v. Schweiker*, 682 F.2d 109, 111 (3d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1020 (1983). The Secretary is authorized to prescribe criteria for determining an individual's ability to engage in substantial gainful employment. 42 U.S.C. § 1383c(a)(3)(D).

In weighing the evidence to determine whether or not a disability exists, the ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion. *Whitney v. Schweiker*, 695 F.2d 784, 488 (7th Cir.1982). Under the Act, the burden of proving the existence of a disability falls on the claimant. *Id.* at 786. However, the burden of going forward shifts to the Secretary to prove that there is available some other kind of "substantial gainful employment" that the claimant can perform, once he establishes that his impairment is of such severity that it precludes him from performing his former work. *McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir.1980).

Judicial review is limited to determining whether or not the administrative findings are supported by "substantial evidence" based on the record as a whole. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct.

1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted).

■ Plaintiff argues that "the overwhelming evidence of record shows the claimant suffers from a vertebrogenic disorder pursuant to Section 1.05(C) [of 20 C.F.R. § 404, Subpart P, App. I]". Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment at 10 (filed Jan. 24, 1986). To find an individual to suffer from a vertebrogenic disorder, this section requires that the ALJ find the claimant to exhibit *both* pain, muscle spasm, and significant limitation of motion in the spine; and appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. 20 C.F.R. § 404, Subpart P, App. I, § 1.05(C). In this case, the ALJ found:

> The record does not show an impairment which meets or equals the severity of any impairment listed in Appendix 1, 20 CFR. While claimant has had herniated discs in the lumbosacral spine, there has never been evidence of the clinical signs and findings specified at section 1.05(C) such as appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

Transcript of Proceedings (Tr.) at 25 (filed Nov. 12, 1985).

Plaintiff does not dispute defendant's contention that no medical evidence supports a finding under the second prong of the test under section 1.05(C)—radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. In fact, several doctors have affirmatively found the absence of such symptoms. Tr. at 167, 169–174, 188. Plaintiff testified as to motor loss and muscle weakness, but the ALJ found his testimony not entirely credible. Tr. at 28. In light of the lack of medical evidence supporting plaintiff's testimony and the deference due the ALJ in assessing credibility, the ALJ's finding that plaintiff's ailment failed to meet the requirements of section 1.05 does not lack support by substantial evidence.

■ Plaintiff next argues that the ALJ erred in finding that plaintiff has the residual capacity to perform other work in the national economy. The ALJ's decision indicates that he considered plaintiff's residual functioning capacity along with his age, education, and past work experience to determine, pursuant to the "grid" system contained in Appendix 2 of 20 C.F.R. § 404, that plaintiff is not "disabled." The use of the grid system is a legitimate way for the Secretary to meet his burden of proving that substantial gainful employment for the claimant exists in the United States economy. *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). But if an individual suffers from a "nonexertional impairment," then the grids cannot be conclusively applied. *Wilson v. Heckler,* 743 F.2d 218, 222 (4th Cir.1984); *Grant v. Schweiker,* 699 F.2d 189 (4th Cir.1983). Nevertheless, "not every malady of a 'nonexertional' nature rises to the level of a 'nonexertional impairment.' The proper inquiry ... is whether a given nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Smith v. Schweiker,* 719 F.2d 723 (4th Cir.1984). Whether a particular ailment rises to the level of a "nonexertional impairment" is a question of fact to be resolved by the Secretary. *Id.* at 725. The ALJ is required to consider the testimony of claimant and his corroborating witness as to claimant's subjective feelings of pain. *Ware v. Schweiker,* 651 F.2d 408, 412 (5th Cir.1981), *cert. denied,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). But the ALJ is not required to believe such testimony. *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir. 1979).

Here, the ALJ's findings provide, in relevant part:

4. Claimant's testimony as to the severity and constancy of his pain is not supported by the medical evidence and is not found entirely credible by the Administrative Law Judge.

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements

of work except for heavy lifting and carrying; prolonged walking and standing (20 CFR 404.1545 and 416.945).

. . . .

7. The claimant has the residual functional capacity for the full range of sedentary work (20 CFR 404.1567 and 416.967).

Tr. at 28. The ALJ thus considered the testimony on plaintiff's behalf, and nevertheless found that plaintiff's pain would not interfere with the sedentary work of which he was exertionally capable. In fact in reaching his result, the ALJ gave "due weight" to plaintiff's testimony as to his pain and found that:

claimant does not have the residual functional capacity for "light" work as suggested by his doctors, primarily because of the standing and walking involved. The Administrative Law Judge does find, however, that claimant has the functional capacity to stand and walk occasionally, sit the remainder of the time and lift no more than ten pounds at a time, which is the definition of "sedentary" work at sections 404.1567 and 416.967.

Tr. at 27.

The ALJ's finding that plaintiff has the functional capacity to perform sedentary work, especially to sit for long periods of time, is supported by the fact that "[n]o physician ... stated that claimant's condition precludes all work activity." Tr. at 27. The fact that the treating physicians in this case did not find plaintiff's pain to preclude gainful employment distinguishes *Wilson, supra,* cited by plaintiff, where the court found that the existence of plaintiff's pain did not allow the ALJ to rely exclusively on the grid system. Specifically, Dr. Polanco, plaintiff's primary treating physician, originally examined plaintiff and cleared him to return to work "with restrictions for heavy lifting, prolonged sitting and standing." Tr. at 189. In early 1981, Dr. Polanco again examined plaintiff and noted "to my

surprise I learned that he had not been able to go back to work." Tr. at 188. Later that year, Dr. Polanco stated that it "will be very difficult indeed to justify his complete disability on the basis of the evaluation conducted today." Tr. at 185. And in a report in 1983 the doctor noted, "I learned that this patient still is not performing at work, and is not back to gainful employment, which I find quite difficult to support in light of the findings of this evaluation." Tr. at 184. In 1984, Dr. Polanco again encouraged plaintiff to return to work "on a light duty profile initially," potentially to be up-graded. Tr. at 181. Finally, two Residual Functional Capacity Assessments included in the administrative record support the ALJ's finding that plaintiff could perform the specific statutory requirements of sedentary work.*

Accordingly, it cannot be said that the ALJ's application of the grid system was in error, nor that the Secretary's decision lacked support by substantial evidence. The accompanying Order will grant defendant's motion for judgment of affirmance and dismiss plaintiff's complaint.

---

* One form was unsigned, but the parties in a telephone conference held on March 12, 1986, stipulated that the other was filled out by a doctor. Because one form clearly represents medical opinion and the other probably does, they are entitled to weight in the evaluation of whether the ALJ's decision is supported by substantial evidence.