**Claude BARGE, Plaintiff,**

v.

**SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. No. H 86–465.**

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 23, 1987.

Charles F. Marlowe, Hammond, Ind., for plaintiff.

Andrew B. Baker, Jr., Asst. U.S. Atty., Hammond, Ind., for defendant.

### ORDER

MOODY, District Judge.

This matter is before the court on cross-motions for summary judgment filed by plaintiff Claude Barge on November 3, 1986 and defendant Secretary, Department of Health and Human Services, ("Secretary") on January 5, 1987. For the reasons discussed below, plaintiff Barge's motion is DENIED and the defendant Secretary's motion is GRANTED.

### I.

*Facts*

Barge applied for a period of disability and disability benefits for social security income on April 1, 1985, alleging that he became disabled and unable to work on October 17, 1983 at age 38 (Transcript [hereinafter "Tr."] at 88–97, 116–119). His application was denied initially (Tr. 120–124) and on reconsideration (Tr. 126–129) by the Office of Disability Operations upon evaluation of the evidence by a physician and a disability examiner from the Indiana State Agency. An administrative law judge ("ALJ") considered Barge's case *de novo* and, on February 20, 1986, found that he was not under a disability (Tr. 6–14). The decision of the ALJ became the final decision of the Secretary when the Appeals Council approved and adopted it on April 1, 1986 (Tr. 3). This being the final administrative action, Barge filed his present action with this court on June 6, 1986 seeking judicial review of the ALJ's determination. Further evidence in the transcript reveals the following uncontroverted facts.

The medical record establishes that Barge was a passenger involved in an automobile accident on October 17, 1983 and hospitalized with complaints of pain in the left shoulder and neck and numbness in the left hand. (Tr. 163). Physical findings after an examination showed no trauma to extremities except for superficial abrasions and movement of all four extremities was unrestricted (Tr. 164). X-rays of the cervical spine, scapula, and ribs were negative (Tr. 165). Electromyelogram performed November 16, 1983, did not reveal any abnormality (Tr. 167).

Since the neck pain did not subsequently improve, Barge was admitted on April 24, 1984 for evaluation of a left C–7 radiculopathy (Tr. 170). An anterior cervical discectomy at the C–6, C–7 disc level was performed and a bone graft was placed there (Tr. 183–184). Barge tolerated the procedure well and made a good post-op recovery. He was prescribed medications for pain control and a hard cervical collar for support, and was discharged with symptoms improving (Tr. 170).

At the May 21, 1984 follow-up examination, Barge was reported as having good improvements (Tr. 188). While there was still some numbness in the first two fingers of the lefthand, strength was markedly im-

proved throughout (Tr. 188). By June 25, 1984, the numbness was basically unchanged while motor strength on the left side was quite improved (Tr. 189). Dr. Amaral concluded that Barge was doing very well (Tr. 189).

On April 23, 1985, Barge was referred to Yong C. Song, M.D., for neurological examination limited to the upper extremities and neck (Tr. 192–198). Physical findings showed mild weakness in the left hand, diminished pin-prick sensation in the left middle finger, and decreased range of motion of the cervical spine (Tr. 193). However, muscle stretch reflex of the major muscle groups was normal; range of motion of the shoulder, elbow and radioulnar joint was grossly within normal ranges; and fine finger manipulation and visual motor coordination was normal (Tr. 193).

Dr. Song opined that Barge could not return to his previous occupation as a carpenter given his current status, and that he should avoid heavy lifting, carrying, pulling and pushing (Tr. 194). Dr. Song considered Barge capable of engaging in employment activities of a light to sedentary work level (Tr. 194).

From September 5, 1985, to November 21, 1985, Barge was seen as an outpatient at Lakeside Veteran's Administration Hospital (Tr. 205–217). Physical examination showed motor strength at 5/5 throughout, and sensory and reflex functions were intact and bilaterally equal except for diminished sensation in the left 2nd and 3rd digits (Tr. 212, 217). The remainder of the physical findings were unremarkable (Tr. 217). Electromyography of the left upper extremity and sensory nerve conduction studies of the left ulnar and median nerve were both within normal limits (Tr. 207–208). Clinical impression of these studies concluded that there was no electrophysiologic evidence of cervical radiculopathy (Tr. 208). Diagnosis was hypertension of recent onset and status-post cervical laminectomy.

Barge returned to Veterans Administration Hospital in December 1985 for evaluation of complaints of recurrent lower back pain (Tr. 218–234). Myelogram showed multiple extra-dural defects in the lumbar region from L2 to S1 which could be related to bulging disc or disc herniation (Tr. 227). CT scan of the cervical spine showed slight bulging between levels C5–C6, while the remaining intervertebral disc between C4–C5 and C6–C7 appeared unremarkable (Tr. 228). Barge was treated with conservative management and therapy (Tr. 229–234). Myelogram performed December 18, 1985 showed possible C5–6 lesion on right which did not correspond to his symptoms (Tr. 233–234). Barge was discharged on December 20, 1985 ambulating with less pain and in no acute distress (Tr. 234).

At the administrative hearing held on January 9, 1986, Barge testified that he was 40 years old and completed the 12th grade in school (Tr. 26, 30). His vocational background includes past work experience as a carpenter's apprentice doing remodeling construction work and as a general laborer in various industries (Tr. 31–37). Barge alleged that he has been unable to work since the October 17, 1983 accident due to severe pain in the left arm and neck, weakness in both arms, lower back pain and pain in the lower legs (Tr. 37–43).

Barge stated that he is in constant pain which disturbs his sleep and he has problems walking and sitting (Tr. 44–45). He alleged that he can only walk about a half block or stand for 5–6 minutes, or sit for 2 hours before he experiences discomfort (Tr. 62–63). He further testified that he has not driven an automobile since summer or fall of 1984 because of neck pain and instability in neck motion (Tr. 29).

Barge also testified that he can dress and care for himself, wash dishes, make his bed, cook, and cut the grass (Tr. 64). He spends most of his time watching television and visits with neighbors and friends (Tr. 65).

In his motion, Barge puts forth two arguments for summary judgment: (1) that the ALJ's determination of Barge's credibility was not based on substantial evidence; and (2) that the ALJ's determination that Barge is capable of sedentary work was not based on substantial evidence. In response, the Secretary argues that the

ALJ's decision *in toto* is based on substantial evidence in the record and seeks to have it affirmed.

## II.

The standard of judicial review of the Secretary's decisions was recently clarified by the Seventh Circuit in *Bauzo v. Bowen,* 803 F.2d 917, 921 (7th Cir.1986). "[J]udicial review should be limited to determining whether the Appeals Council's decision is supported by substantial evidence on the record as a whole." *Id.* (and cases cited therein). In the instant case, the Appeals Council refused further review of the ALJ's decision and adopted the ALJ's determination as its final decision.[1] Therefore, the court looks to the ALJ's decision to see if it is supported by substantial evidence on the record as a whole. *Accord Bauzo,* 803 F.2d at 921; *Stephens v. Heckler,* 766 F.2d 284 (7th Cir.1985).

Substantial evidence has been described as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). This court's duty is not to reweigh the evidence, decide the facts anew, or substitute its judgment for that of the ALJ. *Bauzo,* 803 F.2d at 923; *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986) (per curiam). If the record contains the necessary facts to support the ALJ's determination, this court must affirm, 42 U.S.C. § 405(g), unless

there has been an error of law. *Garfield v. Schweiker,* 732 F.2d 605, 607 (7th Cir. 1984) (citing *Schmoll v. Harris,* 636 F.2d 1146, 1150 (7th Cir.1980)).

## A.

### *Claimant's Credibility*

Barge first argues that the ALJ erred by refusing to credit fully Barge's subjective complaints of pain on the basis that there was no objective medical evidence to support his complaints. Barge maintains that "subjective complaints may serve as the basis for establishing disability even if such complaints are unaccompanied by positive clinical findings or other objective medical evidence."[2] In support of his position, Barge relies on *Freeman v. Heckler,* 739 F.2d 565 (11th Cir.1984) and *Benson v. Heckler,* 780 F.2d 16 (8th Cir.1985).

After a review of *Freeman* and *Benson,* the court agrees that at least in the Eleventh and Eighth Circuits,[3] an ALJ cannot discount a claimant's allegations of pain solely because of a lack of objective medical evidence. However, the Court of Appeals for the Seventh Circuit has adopted a different approach. In *McNeil v. Califano,* 614 F.2d 142 (7th Cir.1980), the ALJ, like here, was faced with the subjective complaints of pain from a claimant which were not supported by independent medical testimony. The ALJ in *McNeil* refused to give full weight to the claimant's complaints because they were not supported by objective medical evidence. In upholding the ALJ's determination of

1. In its denial of further review, the Appeals Council stated the "request is denied and the administrative law judge's decision stands as the final decision of the Secretary in [this] case."

2. Barge, in putting forth this agument, appears to concede that there was in fact no independent medical testimony to support the severity of his subjective complaints of pain.

3. Upon a closer reading of *Benson,* the court finds that the Eighth Circuit's holding is based on an interim agreement adopted by the court of appeals in that circuit in *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984). However, in a later case, *Polaski v. Heckler,* 751 F.2d 943 (8th Cir.1984), the court of appeals recognized that

its holding was limited to the eighth circuit, *id.* at 948, and actually acknowledged that the interim agreement would lapse and be replaced by a new Congressional statute on January 1, 1987, *id.* at 950.

There is no similar interim agreement in the seventh circuit, in fact, the Seventh Circuit Court of Appeals has held that the new statute was effective in this circuit on the day it was passed by Congress in 1984. *Sparks v. Bowen,* 807 F.2d 616, 617 (7th Cir., 1986). Because Barge made his initial application for disability benefits in April 1985, the new statute is clearly applicable in this case. *Id.*

the claimant's credibility, the *McNeil* court stated:

> [T]he administrative law judge in this case explicitly weighed the claimant's subjective complaints of pain, and specifically found that these complaints were not supported by the evidence. The administrative law judge ultimately determined that, based upon the record developed at the hearing, any pain experienced by the claimant did not preclude all kinds of substantial gainful activity as required for eligibility under the Act. Nothing further is required.

641 F.2d at 145.

This circuit's position was given authoritative support by Congress on September 19, 1984 when it passed the Social Security Disability Benefits Reform Act of 1984.[4] That Act amended the existing law with respect to the evaluation of pain. It provides in part:

> EVALUATION OF PAIN.
>
> Sec. 3. (a)(1)[.] Section 223(d)(5) of the Social Security Act is amended by inserting after the first sentence the following new sentences: "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or

laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

Most recently, the Seventh Circuit, in reaffirming its position on this issue, had occasion to explain the import of this new statute in *Sparks v. Bowen,* 807 F.2d 616 (7th Cir., 1986). The court stated:

> The requirement that a claimant show an objectively verifiable abnormality is designed to screen out claims by hypochondriacs and goldbricks. No claim may be allowed without medical evidence showing that the complaint has an ascertainable cause. But once there is evidence of an objectively demonstrated abnormality and either "(1) ... objective medical evidence [confirms] the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition [is] of a severity which can reasonably be expected to give rise to the alleged pain", S.Rep. No. 98–466, 98th Cong., 2d Sess. 24 (1984), the requirement of § 423(d)(5)(A) is fulfilled.

*Id.* at 618. *See also Nelson v. Secretary of Health and Human Services,* 770 F.2d 682, 685 (7th Cir.1985) (upholding ALJ's determination of credibility in absence of supporting medical evidence to the contrary); 20 C.F.R. §§ 404.1529, 416.929.

▇▇▇ The court finds that the ALJ here properly applied the law of this circuit on the evaluation of pain, that is, there must be independent, objective medical evidence to support a claimant's subjective complaints of pain before the claimant can be found disabled. After reviewing the medical testimony and Barge's own testimony, the ALJ, in paragraph 4 of his "Findings" stated:

> The claimant's testimony with respect to his pain, limitations and restrictions is not fully accepted in view of the lack of objective medical evidence of an impairment or combination of impairments

---

**4.** The previously existing statute stated only: "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5).

which could reasonably be expected to produce the pain, limitations, and restrictions to which he testified. (Tr. 12–13). Therefore, after review of the medical evidence, the court holds that the ALJ's determination of Barge's credibility was based on substantial evidence.

## B.

### *Light work*

Barge next argues that the ALJ's determination that he is capable of light[5] work was not based on substantial evidence. The gravamen of Barge's argument is that the Secretary failed to carry his burden by not mentioning jobs that Barge was capable of performing or addressing the issue of transferability of skills.

It is well established that a claimant ultimately bears the burden to prove, through objective medical evidence, that he is so functionally impaired that he is precluded from doing any substantial, gainful activity for at least the statutory duration period of twelve continuous months. *Johnson v. Weinberger*, 525 F.2d 403 (7th Cir.1975). Once the plaintiff establishes a prima facie case of disability by proving inability to do his previous work, the burden shifts temporarily to the Secretary to go forward to show the existence of alternative work which the plaintiff can perform. *McNeil v. Califano*, 614 F.2d 142 (7th Cir.1980). The Secretary's burden is met by reliance on the testimony of a vocational expert or by application of the relevant medical-vocational guidelines. *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Cummins v. Schweiker*, 670 F.2d 81 (7th Cir.1982).

The record here reveals that Barge was examined by a Dr. Song in April of 1985. Dr. Song indicated that Barge should avoid *heavy* lifting, pulling or pushing, but opined further that he was physically capable of performing light to sedentary type work activities (Tr. 193–194).

While a myelogram revealed extra-dural defects in the L1 to S1 lumbar levels in December 1985, the record does no show any prior complaints or medical treatment pertaining to a significant impairment to the lumbar spine (Tr. 171, 188–189, 193, 209). The December 1985 hospitalization consisted of conservative management with pain controlled by Tylenol # 3.

▇ The evidence on the record taken as a whole fails to support Barge's subjective complaints of pain and limitations to the extent alleged. The ALJ sufficiently articulated his assessment of the evidence in his decision and properly discounted Barge's testimony with respect to pain and limitations in view of the lack of objective medical evidence. 42 U.S.C. § 423(d)(5); *Zalewski v. Heckler*, 760 F.2d 160, 166–167 (7th Cir.1985).

The ALJ concluded that Barge could perform activities which would require occasional lifting of 20 pounds and frequent lifting of objects up to 10 pounds (Tr. 12). The ALJ concluded further that the record did not establish any impairment or combination of impairments which could reasonably be expected to limit Barge's ability to walk, stand or sit and that his ability to perform manipulation was not significantly impaired (Tr. 12). Hence, Barge was found to retain the residual functional capacity to perform the full range of light work as defined in the regulations. 20 C.F.R. § 404.1567(b), § 416.967(b) (1986). This finding was in complete accord with Dr. Song's determination (Tr. 193–194). Because substantial evidence in the record as a whole supports the ALJ's factual finding that Barge can perform light work, this finding is conclusive. 42 U.S.C. § 405(g).

▇ Barge's past relevant work required lifting a maximum of 50 pounds at a time, and, consequently, the ALJ found he was unable to return to his past job. The burden of going forward then shifted to the Secretary to show that there existed other

---

**5.** Barge's motion actually objects to the ALJ's finding that Barge is capable of "sedentary" work even though the ALJ's decision clearly states that Barge is capable to "perform the full range of light work" (Tr. 13). In affirming the ALJ's decision in this case, the court affirms the determination that Barge is capable of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) (1986).

substantial, gainful work which Barge could perform. *McNeil,* 614 F.2d 142 (7th Cir.1980). The Secretary has promulgated medical-vocational guidelines consisting of a matrix of four factors identified by Congress—physical ability, age, education and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. 20 C.F.R. Part 404, Subpart P, Appendix 2; *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Where a claimant's qualifications correspond to the job requirement identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant can perform. If such work exists, the claimant is not considered disabled. *Id.* at 462, 103 S.Ct. 1952, 1955.

Barge is 39 years old which is defined as a "younger person," 20 C.F.R. § 404.1563(b), and has a "high school education," 20 C.F.R. § 404.1564(b)(4), § 416.964(b)(4). In view of his age and residual functional capacity, the issue of transferability of work skills is not material. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 202.00.[6] Considering Barge's age, education, work experience and residual functional capacity, Rule 202.-20, Appendix 2, directs a conclusion that he is not disabled. *Heckler v. Campbell, supra.* Because substantial evidence in the whole record supports the Secretary's final decision that Barge is not under a disability as defined in the Social Security Act, the ALJ's determination denying benefits should be affirmed. 42 U.S.C. § 405(g); *Cummins v. Schweiker,* 670 F.2d 81 (7th Cir.1982).

### CONCLUSION

Based on the foregoing review of the record in this case, plaintiff Barge's motion for summary judgment is hereby DENIED.

The court further ORDERS that the Secretary's motion for summary judgment is hereby GRANTED and the ALJ's decision is hereby AFFIRMED.

---

**6.** When describing the availability and required skills for jobs involving light work, the regulations state:

> Approximately 1,600 separate sedentary and light unskilled occupations can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy. These jobs can be performed after a short demonstration or within 30 days, and do not require special skills or experience.

20 C.F.R., Part 404, Subpart P, Appendix 2, § 202.00(a) (1986).